## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JOHN DOE, *on behalf of himself and all others similarly situated*,<br><br>    Plaintiff,<br><br>v.<br><br>PROHEALTH CARE,<br><br>    Defendant. | Case No.: 23-cv-296 |

### *EX PARTE* MOTION FOR LEAVE FOR PLAINTIFF TO PROCEED ANONYMOUSLY AS JOHN DOE

1. On March 3, 2023, Plaintiff John Doe commenced this class action lawsuit by filing a complaint, in his individual capacity and on behalf of all others similarly situated, against ProHealth Care ("ProHealth" or "Defendant") for its illegal and widespread practice of disclosing Plaintiff's and putative class members' confidential personally identifiable information ("PII") and protected health information ("PHI") (collectively referred to as "Private Information") to third parties, including Meta Platforms, Inc. d/b/a Meta ("Facebook"). (*See* Docket Entry ("D.E.") 1, Class Action Complaint.)

2. In order to avoid compounding the injuries and damages which gave rise to this litigation and given the highly sensitive nature of the non-public, confidential and highly sensitive Private Information disclosed by Defendant without permission, Plaintiff filed the Complaint anonymously and hereby seeks leave to proceed with the lawsuit in such capacity. *See, e.g.*, *Doe v. Bd. of Regents of Univ. of Wis. Sys.*, No. 19-cv-1348-pp, at *3 (E.D. Wis. Sep. 8, 2020); *In re Meta Pixel Healthcare Litig.*, No. 22-CV-03580-WHO, at *1 (N.D. Cal. Dec. 22, 2022) (stating

1

that "Plaintiffs are four Facebook users who are proceeding anonymously due to the sensitive nature of this litigation").[1]

3. Plaintiff John Doe is a natural person and citizen of Wisconsin, residing in Hubertus, Wisconsin, where he intends to remain.

4. On numerous occasions, with the most recent being in December 2022, Plaintiff Doe accessed and used Defendant's Website to look for providers at ProHealth Waukesha Memorial Hospital ("WMH") and ProHealth Medical Group Clinic at Sussex ("MG Clinic"), to arrange care and treatment, to make appointments and to pay bills.

5. Further to the systematic process described herein (and more fully in the Complaint), ProHealth assisted Facebook with intercepting Plaintiff's communications, including those that contained personally identifiable information, protected health information and related confidential information.

6. Plaintiff has significant concerns about disclosing his identity to the public in order to protect his significant privacy interests, including the Private Information that has already been disclosed as a result of Defendant's actions.

7. Moreover, public disclosure of Plaintiff's identity could potentially increase the damages foisted upon him as a result of Defendant's disclosure of his (and thousands of others') Private Information.

8. Plaintiff is willing to provide his identity to Defendant's counsel so that it may adequately investigate his claims and contentions.

---

[1] At a recent hearing, presiding judge in the *In re Facebook Pixel Tracking* case, the Honorable William H. Orrick, stated that "I think that is a kind of thing that a reasonable Facebook user would be shocked to realize" and "[i]f what the plaintiffs are saying is true … I think it's a big problem that there's not a specific consent." (*See* **Ex. A** hereto.)

9. By way of brief background, Defendant owns and controls a website, www.prohealthcare.org (the "Website"), by which it encourages patients to book medical appointments, search for physicians and treatment facilities, communicate with healthcare providers, enroll in events and classes, among many other interactions.

10. Unbeknownst to Plaintiff (and other putative class members who used Defendant's Website), Defendant had embedded the Facebook Tracking Pixel (the "Pixel" or "Facebook Pixel") on its Website, which automatically transmits to Facebook every click, keystroke and intimate detail about their medical treatment.

11. Operating as designed and as implemented by Defendant, the Pixel allows the Private Information that Plaintiff and Class Members submit to Defendant to be unlawfully disclosed to Facebook alongside the individual's unique and persistent Facebook ID ("FID").

12. Information about a person's physical and mental health is among the most confidential and sensitive information in our society and the mishandling of medical information can have serious consequences, including discrimination in the workplace or denial of insurance coverage.

13. Recognizing these incontrovertible facts and in order to implement requirements of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), the United States Department of Health and Human Services ("HHS") established "Standards for Privacy of Individually Identifiable Health Information" (also known as the "Privacy Rule") governing how health care providers must safeguard and protect Private Information.

14. Under the HIPAA Privacy Rule, no health care provider may disclose a person's personally identifiable protected health information to a third party without express written authorization.

15. Moreover, covered entities such as ProHealth are simply not permitted to use third-party tracking tools, such as Google Analytics or Meta Pixel, in a way that may expose patients' protected health information:

> Regulated entities [those to which HIPAA applies] are not permitted to use tracking technologies in a manner that would result in impermissible disclosures of PHI to tracking technology vendors or any other violations of the HIPAA Rules. ***For example, disclosures of PHI to tracking technology vendors for marketing purposes, without individuals' HIPAA-compliant authorizations, would constitute impermissible disclosures.***[2]

16. The information that Defendant's Tracking Pixel sent to Facebook included the Private Information that Plaintiff submitted to Defendant's Website, including for example, the type of medical treatment sought, the individual's particular health condition and the fact that the individual attempted to or did book a medical appointment.

17. Such information allows a third party (*e.g,* Facebook) to know that a specific patient was seeking medical care, searching particular ailments or treatments, interested in certain treatments and a host of other things.

18. Facebook and any third-party purchasers of Plaintiff's Private Information also could reasonably infer from the data that a specific patient was being treated for a specific type of medical condition, such as cancer, pregnancy, dementia or HIV.

19. As a result of Defendant's conduct, Plaintiff has suffered numerous injuries, including: (i) invasion of privacy; (ii) lost time and opportunity costs associated with attempting to mitigate the actual consequences of the Pixel, (iii) loss of benefit of the bargain, (iv) diminution of value of the Private Information, (v) statutory damages and (vi) the continued and ongoing risk

---

[2] https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last visited March 2, 2023) (emphasis added).

to their Private Information.

20. There is ample legal support for Plaintiff's request to proceed anonymously; while Rule 10(a) of the Federal Rules of Civil Procedure requires a party filing a complaint to name all the parties, that requirement is *not* absolute and may be excused for good cause shown. *See* Fed.R.Civ.P. 10(a); *Doe v. City of Chicago*, 360 F.3d 667, 669 (7th Cir.2004) (stating that the "presumption that parties' identities are public information, and the possible prejudice to the opposing party from concealment, can be rebutted by showing that the harm to the [party requesting anonymity] . . . exceeds the likely harm from concealment"); *Malibu Media, LLC v. Doe*, No. 13-C-0213, at *5-6 (E.D. Wis. Oct. 31, 2013) (granting motion for defendant to proceed anonymously).

21. The Seventh Circuit has recognized exceptions to this requirement, such as circumstances in which the use of a fictitious name will protect a vulnerable party or witness. *See Doe v. Bd. of Regents of Univ. of Wis. Sys.*, No. 19-cv-1348-pp, at *3, citing *Mitze*, 968 F.3d at 692 (stating that a "plaintiff wishing to proceed anonymously must rebut the presumption that parties' identities are public information by showing that [his] need for anonymity outweighs the harm of concealment").

22. And, while the Seventh Circuit has not identified criteria for determining exceptional circumstances, several factors that courts consider in deciding whether to allow a plaintiff to proceed anonymously are present here, namely:

- that public disclosure of plaintiff's identity could increase the potential for harm given that Defendant has disclosed his Private Information to third parties without his consent;

- that there is *no* prejudice to defendant in defending against a suit brought under a pseudonym (particularly so since Plaintiff is willing to provide his identity to defense counsel) and

- that the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity.

*See Doe v. Purdue Univ.*, No. 4:19-CV-56-TLS-JPK, 2019 WL 3887165m, at *2 (N.D. Ind. Aug. 19, 2019) (granting motion to proceed anonymously because, among other things, the public interest would be served because the case would not be sealed and all proceedings would be kept open); *Doe v. Bd. of Regents of Univ. of Wis. Sys.*, No. 19-cv-1348-pp, at *3 (citing *Purdue*, granting motion to proceed anonymously but not sealing the case).

23. Here, public disclosure of Plaintiff's identity could increase the harms that have already been foisted upon him as a result of Defendant's decision to embed the Facebook Pixel on its website and to share Plaintiff's Private Information for marketing purposes. If Plaintiff's identity is public and, in addition, his name is combined with any of the improperly released Private Information, the potential for identity theft, medical identity theft, fraud and financial loss, discrimination, stigma, mental anguish and other negative consequences increase exponentially.

24. This is not conjecture or speculation; rather the The United States Department of Health and Human Services recently release a bulletin, entitled *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates* (available at https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html), which detailed precisely these types of harms that could befall consumers as a result of such tracking technologies.

25. Proceeding anonymously in this case is further warranted because there is no harm whatsoever to the public or to the Defendant as Plaintiff will provide his identity to defense counsel and the case will not be sealed.

26. Finally, proceeding anonymously is appropriate because the very purpose of this

case is to stop Defendant from disclosing Plaintiff's Private Information without his informed and express consent – or, in other words, similar injuries as to those litigated against which could be incurred as a result of the disclosure of Plaintiff's identity.

**WHEREFORE**, for the foregoing reasons, Plaintiff respectfully requests that this Honorable Court grant his request to proceed anonymously in this putative class action litigation and to grant all such other relief as is equitable and just.

Date: March 3, 2023

Respectfully submitted,

**HANSEN REYNOLDS LLC**

/s/ Timothy M. Hansen
Timothy M. Hansen (SBN 1044430)
Michael C. Lueder (SBN 1039954)
301 N. Broadway, Suite 400
Milwaukee, Wisconsin 53202
(414) 455-7676 (phone)
(414) 273-8476 (fax)
thansen@hansenreynolds.com
mlueder@hansenreynolds.com

**ALMEIDA LAW GROUP LLC**

David S. Almeida (SBN 1086050)
849 W. Webster Avenue
Chicago, Illinois 60614
(312) 576-3024 (phone)
david@almeidalawgroup.com

**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**

Gary M. Klinger
227 Monroe Street, Suite 2100
Chicago, IL 60606
(866) 252-0878 (phone)
gklinger@milberg.com

*Attorneys for Plaintiff & the Putative Class*